## HARDWARE MUT. CASUALTY CO. v. WENDLINGER.

### No. 5313.

Circuit Court of Appeals, Fourth Circuit.

Dec. 26, 1944.

Archibald G. Robertson, of Richmond, Va. (Hunton, Williams, Anderson, Gay & Moore and Thomas B. Gay, all of Richmond, Va., on the brief), for appellant.

Thomas A. Williams and John W. Fussell, both of Richmond, Va. (L. C. O'Connor, of Richmond, Va., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

Robert M. Wendlinger (the appellee in this case) recovered a judgment for $4500 against Mildred Barbee in a Virginia State Court for injuries sustained in an automobile accident occurring in the City of Richmond, Virginia, on October 31, 1942. Being unsuccessful in collecting the judgment, Wendlinger then brought suit against her and the Hardware Mutual Casualty Company, a corporation of the State of Wisconsin, the appellant in this case, (hereinafter called the Insurer) to collect the judgment. This latter suit was duly removed from the State Court to the District Court of the United States for the Eastern District of Virginia. In that court, both the plaintiff and the defendant moved for a directed verdict in their favor respectively. The District Judge directed a verdict for the plaintiff in the amount of $4500 and subsequently overruled a motion by the defendant for judgment notwithstanding the verdict. From the ensuing judgment the Insurer has appealed.

The liability of the Insurer is predicated upon its policy of insurance called an "automobile garage liability policy". It was issued to J. W. Ramsey and Duncan Barbee d/b/a (doing business as) Ramsey & Barbee, address, North Fifth Street, Auburn, Sangamon County, Illinois, the location of the insured premises being the same. The policy period was from August 21, 1942 to August 21, 1943; and the limit of liability for bodily injury was $10,000 for each person. The coverage of the policy was limited to the named insured as an "automobile dealer or repair shop", but with an "additional interests endorsement".

The "insuring agreement" was to "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages * * * because of bodily injury * * * sustained by any person or persons caused by accident and *arising out of such of the operations hereinafter defined as are indicated* by specific premium charge or charges *in Item 4 of the declarations."*

The operations covered by the policy were defined as follows:

*"Division* 1. *Automobile Dealer or Repair Shop.* The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations, either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; *and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."*

Under the heading of "exclusions" it was provided *"This policy does not apply; * * * to the ownership, maintenance or use for pleasure purposes of any automobile not owned by or in charge of the named insured for use principally in such operations."*

Under the designation of "insured" it was provided "The unqualified word 'insured' wherever used includes not only the named insured but also any partner thereof if the named insured is a partnership * * * *provided, such partner or officer is active in the declared operations."*

The pertinent parts of the "additional interests endorsement" were—

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies subject to the following provisions—

"1. To any employee of the named insured, as insured (with certain limitations not here applicable)

"2. To any other person, or organization, as insured provided: The insurance

applies only if the named insured's operations are classified as 'automobile dealer or repair shop' and only with respect to the use, for such business operations *or for pleasure purposes* of any *automobile covered under such classification;*

"3. The insurance does not apply (a) unless the actual use of the automobile is with the permission of the named insured; * * *.

"All other conditions and provisions remain unchanged."

It was further provided by the policy that the insurance "shall comply with the provisions of the Motor Vehicle Financial Responsibility Law of any State or Province which shall be applicable  * * *."

We have italicized those phrases of the policy provisions that are specially pertinent to the proper construction and application of the insurance contract to the facts of this case.

In support of its defense the Insurer relies upon the policy provisions above quoted limiting the coverage granted and particularly upon the exclusion clause of the policy whereby the coverage does not extend to accidents arising from the "pleasure use" of an automobile when not owned for use principally in the operations of the insured automobile dealer. As to this the evidence in the case was uncontradicted. Mildred Barbee was the wife of Duncan Barbee who was a member of the firm of Ramsey & Barbee, the named insured, whose garage business was at Auburn in the State of Illinois. The policy was issued July 28, 1942. Some two weeks thereafter and before the policy period began on August 21, 1942, in view of the then reduced volume of business of the partnership, Duncan Barbee sought employment in connection with a military camp near Petersburg, Virginia, agreeing to relinquish his salary from the business while away, but not his share of the profits, and to return at any time if needed. Pursuant to this arrangement Barbee rented his residence in Auburn, Illinois, leased an unfurnished apartment in Richmond, Virginia, for a term of one year, and bought furniture for it. After arriving in Virginia, Barbee and his wife used the automobile involved in the accident for general personal purposes. The accident in which the plaintiff Wendlinger was injured occurred in Richmond on October 31, 1942 while Mrs. Barbee was driving the automobile with the consent of her husband. Thereafter the business of the partnership in Auburn, Ill., improved to such an extent that Ramsey requested Barbee to return and the latter resigned his employment at Camp Lee and returned to Auburn in February 1943. The automobile was registered under the laws of the State of Illinois in the name of Ramsey & Barbee.

Under this state of facts the District Judge should have directed a verdict for the defendant because it is clear that the automobile involved in the accident was not within the coverage of the policy. It was not being used in the insured's business even incidentally, and under the exclusion clause it was not covered by the policy even when used for pleasure purposes unless its ownership by the insured was principally for use in connection with the garage operations. We think it cannot be said that it was owned for such use under the uncontradicted evidence.

The policy is called an "automobile garage liability policy"; and it will be noted that the primary risk assumed by the policy is the liability of the assured for operations of the garage business. Automobiles are included because they are necessary features of the business; but the policy does not specify or describe any particular automobile. In this respect this form of policy is to be sharply differentiated from the ordinary automobile liability policy which covers liability for loss and damage resulting from the operation of a particularly named and described automobile anywhere in the United States and Canada. In the instant case the only identification for any automobile is to be found in the clause above quoted which protected the named insured from liability resulting from the ownership, maintenance or use of any automobile for any purpose in connection with the defined operations of the business, and also for pleasure use; but when used for pleasure and not for the garage operations the automobiles covered by the policy were limited to those owned principally for use in the garage operations. Under the undisputed facts the automobile involved in the accident had been withdrawn from the operations of the business, even before the risk under the policy attached. It was taken to a far distant State by one of the partners who had there engaged in an entirely different employment, and was being used by him and his wife for an indefinite

period for their own personal convenience in no way connected with the business operations of the partnership. In these circumstances the particular automobile was not within the description of those covered by the policy and there was no liability on the insurer for the accident which occurred.

The contention of the appellee is that the policy covered any automobile owned by the named insured, Ramsey & Barbee, when used for pleasure purposes, and also indemnified in addition to the named insured any other person so using the automobile with the permission of the named insured. This construction of the policy is untenable because it ignores the policy provisions which limit the class of automobiles covered to those which are related to the operations of the garage business. While the "additional interests endorsement" extended the protection afforded by the policy to Mildred Barbee as a person other than the named insured with respect to the use of automobiles covered by the policy, it did not extend the classification of what automobiles were themselves covered by the policy even when used for pleasure purposes.

In recent years policies of this general nature have been in customary use, and there have been many judicial decisions construing and applying their somewhat variant provisions. See Appleman, Insurance Law and Practice, Vol. VII, c. 188, p. 276. In the decision in each case there are two important factors to be borne in mind, one, the policy provisions, and the other, the facts of the particular case. Decisions in particular cases are, therefore, not persuasive in the instant case unless both the policy provisions and the facts are the same or similar in principle. We have been unable to find any previously decided case that is substantially similar in both respects. In Newton v. Employers Liability Assur. Corporation, Ltd., 4 Cir., 107 F. 2d 164, this court held the insurer liable on a garage public liability policy where the plaintiff was injured in Norfolk, Virginia, by an automobile driven by one Green, a salesman employed by the insured. A prior suit by the plaintiff against Green and the insured employer resulted in a judgment against Green but absolving the employer from liability. In the subsequent suit on the policy, Green being insolvent, the insurer was held liable under the policy. The liability was based on the applicable Virginia statute (Va. Code, § 4326a) which

imposed such liability on policies issued and delivered in that State to owners of motor vehicles, the negligent operation of which with the permission, express or implied, of the owner causes damage to other persons. But it will be noted from the opinion in the case that the policy provisions either did not contain the exclusion clause which is present in the instant case, or at least such a clause was not relied upon by the defendant, presumably because the facts of the case did not make it applicable. The only question involved in that case was whether the omnibus coverage clause of a Virginia statute was to be read into the provisions of a garage liability policy, which admittedly covered the automobile which caused the injury if being operated by a person named in the policy. The question here is whether the automobile is covered by the garage policy at all; and, because it is not covered, questions as to the applicability of the omnibus coverage clause do not arise. And in Culver v. Webb, 244 Wis. 478, 12 N.W.2d 731, the defendant insurer was again held liable on a similar garage policy which did contain the exclusion clause like the one in the instant case, but the facts did not bring the clause into play and it was apparently not invoked by the defendant. In other cases involving garage policies, similarly if not identically worded, where the facts showed that the automobile causing the injury was not being used in connection with the described garage operations, the insurer was held not liable. Barrett v. Employers Liability Assur. Corporation, 5 Cir., 118 F.2d 799; Lavine v. Indemnity Ins. Co., 260 N.Y. 399, 183 N.E. 897; Hardware Mut. Casualty Co. v. Higgason, 175 Tenn. 357, 134 S.W.2d 169; Maas v. Harvey, 200 La. 736, 8 So.2d 683.

The argument for the appellee stresses the phrase of the policy which permits the use for *pleasure purposes* of automobiles covered by the policy. This phrase is, of course, not meaningless. It does extend the purposes for which automobiles covered by the policy may be used, but it does not extend the classification of the automobiles that are covered. In Slattery v. Merchants Mut. Casualty Co., 125 Conn. 507, 7 A.2d 383, 384, which was also a suit upon a garage liability policy containing the phrase "including pleasure use", the court said: "The clause referring to the pleasure use of cars was presumably necessary to obviate the possibility of the company claim-

ing nonliability on the ground that the car was being used for pleasure, *even though it was in connection with the insured's business,* in some such situations, for instance, as that we had before us in Ackerson v. [Erwin M.] Jennings Co. 107 Conn. 393, 140 A. 769, 56 A.L.R. 1127." (Italics supplied.) In Barrett v. Employers Liability Assur. Corporation, Ltd., 5 Cir., 118 F.2d 799, 801, it was said in the opinion by Circuit Judge Hutcheson:

"The provision in the policy for 'pleasure use' appearing in the Definition of Assured and in the Definition of Operations, is placed there to protect the named assured from liability imposed upon him by law where he or his partner injures someone while using the car for pleasure, or where, though used for pleasure, the car is also being used in connection with the business of the owner. Instances of this are, use for pleasure by employees or customers in connection with the business of the employer such as demonstrating or trying out a car in connection with a possible purchase. Cf. Slattery v. Merchants Mut. Casualty Co., 125 Conn. 507, 7 A.2d 383 and Lavine v. Indemnity Insurance Co., 260 N.Y. 399, 183 N.E. 897."

Counsel for the appellee also relies upon the statutes of Virginia, Illinois and Wisconsin, which, though differing in detail, have the same general purposes, to make certain automobile liability policies responsible for injuries to any person caused by the negligent operation of the insured automobile when used with the permission or consent of the owner or the assured. The Virginia statute, § 4326a, was considered by this court in Newton v. Employers Liability Assur. Corporation, Ltd., 4 Cir., 107 F.2d 164, certiorari denied 309 U.S. 673, 698, 60 S.Ct. 616, 84 L.Ed. 1018, and in Clarke v. Harleysville Mut. Casualty Co., 4 Cir., 123 F.2d 499. It is not applicable in this case because by its terms it affects only policies issued and delivered in Virginia, the instant policy having been issued and delivered in Illinois. The Illinois statute is to be found in Smith-Hurd Stats. Ill. c. 95½, § 58k, Jones Illinois Statutes, Vol. 15, Cum.Supp. c. 85.064(11) 1943. We assume that it, by virtue of its intrinsic effect, and also by the express policy provision heretofore referred to, is to be considered written into the policy sued on in this case. The Wisconsin statute [Stats. 204.30(3)] was considered in Culver v. Webb, 244 Wis. 478, 12 N.W.2d 731, and

in Mauel v. Wisconsin Auto Ins. Co., 211 Wis. 230, 248 N.W. 121. But none of these statutes adds anything to the appellee's case here in view of the "additional interests endorsement" on the particular policy which expressly extends the coverage of the policy in favor of any person operating any automobile insured by the policy with the consent of the assured. This endorsement and the effect of the statutes when applicable, is to add to the policy the so-called "omnibus clause". But neither the statutes nor the endorsement are effective to override the conditions and exclusions of the policy which restrict its coverage. They were not intended to, and could not properly, extend the amount of the liability assumed, nor can they extend the policy coverage to automobiles not therein included. Drewek v. Milwaukee Auto. Ins. Co., 207 Wis. 445, 240 N.W. 881; Paine v. Finkler Motor Car Co., 220 Wis. 9, 264 N.W. 477; Johnston v. New Amsterdam Casualty Co., 200 N.C. 763, 158 S. E. 473; Indemnity Ins. Co. v. Davis, 150 Va. 778, 143 S.E. 328; Royal Indemnity Co. v. Morris, 9 Cir., 37 F.2d 90, certiorari denied 281 U.S. 748, 50 S.Ct. 353, 74 L.Ed. 1160; Ohio Casualty Ins. Co. v. Plummer, 5 Cir., 13 F.Supp. 169. And this principle of construction has been applied to these garage liability policies. Lavine v. Indemnity Ins. Co. 260 N.Y. 399, 407, 183 N.E. 897; Newton v. Employers Liab. Assur. Corp. Ltd., supra; Appleman Insurance Law and Practice, Vol. VII, c. 188, p. 276.

Counsel for the appellee also refers to the printed provision of the policy which reads: "This policy applies only to accidents which occur during the policy period within the United States of America, Canada or Newfoundland." This is a very customary provision in automobile policies. It, of course, applies to accidents resulting from the use of any automobile included in the policy; but it obviously does not apply to accidents arising from the use of an automobile not within the coverage of the policy. Lavine v. Indemnity Ins. Co. 260 N.Y. 399, 183 N.E. 897.

As this case was tried in Virginia and the jurisdiction of the federal court was based on diverse citizenship only, it is our duty here to give effect to any applicable Virginia decisions. New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. As the policy was

issued and delivered in Illinois, we first look to the Virginia decisions on the conflict of laws with respect to the applicable rule of interpretation of the contract. Ruhlin v. New York Life Ins. Co. 304 U.S. 202, 208, note 2, 58 S.Ct. 860, 82 L.Ed. 1290. On this point we find the Virginia decisions are in accord with the general doctrine that the interpretation of the contract depends upon the law of the place where the policy was delivered. Phoenix Indemnity Co. v. Anderson, 170 Va. 406, 196 S.E. 629; C.I.T. Corporation v. Guy, 170 Va. 16, 195 S.E. 659; Union Central Life Ins. Co. v. Pollard, 94 Va. 146, 26 S.E. 421, 36 L.R.A. 271, 64 Am.St.Rep. 715. And we also find the Illinois rule of interpretation of insurance contracts is in accord with the generally prevailing rule upon that subject, which is that in the absence of ambiguity the terms used in the contract must be given effect in accordance with their plain meaning; but that if ambiguities do occur they should be liberally construed in favor of the insured. Midwest Dairy Products Corporation v. Ohio Casualty Ins. Co., 356 Ill. 389, 190 N.E. 702; Halmel v. Motor Vehicle Casualty Co., 357 Ill. 576, 192 N.E. 557; Coons v. Home Life Ins. Co., 368 Ill. 231, 13 N.E. 2d 482. The same rule prevails in Virginia, and in the federal courts when not otherwise controlled by state decisions. Welborn v. Wyatt, 175 Va. 163, 7 S.E.2d 99; Darden v. North American Ben. Ass'n, 170 Va. 479, 197 S.E. 413; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416. As heretofore indicated, we find no ambiguity in the policy sued on in this case. The controlling provisions, especially the exclusion clause, seem to us plain in their meaning and effect. While we have found no Virginia case closely in point with respect both to the policy provisions and facts of the case, we do find that the principles applied in several Virginia decisions give general support to the conclusion that we have reached. Ellis v. New Amsterdam Cas. Co., 169 Va. 620, 194 S.E. 687; Indemnity Ins. Co. v. Davis, 150 Va. 778, 143 S.E. 328; Ocean Accident & Guarantee Corporation v. Blackstock, 165 Va. 98, 181 S.E. 364; Maxey v. American Casualty Co., 180 Va. 285, 23 S.E.2d 221.

It results that the judgment must be reversed with directions to enter judgment for the defendant in the district court.

Reversed.